## EX PARTE GLENN.

1. Where a parent died after the abolition of slavery, slaves previously given to a child cannot, under our statute, be charged as an advancement to such child in the settlement of the parent's estate. *Hughey* v. *Eichelberger,* 11 *S. C.* 51, approved.
2. Where an administrator received for the estate $500 in gold, then worth a premium of forty per cent., and had, in part, disbursed this gold at such premium, and he fails to show that he retained the balance for estate purposes until it had depreciated, he should be charged with the amount received and also with a premium of forty per cent.
3. Interest cannot be charged on advancements until the death of the intestate.
4. A father was surety on a note for his two sons A. and B. The payee died and this father administered, and received a payment from A. on the note, and then destroyed the note, having charged himself with its amount in his administration accounts. Afterwards the father died intestate. *Held,* that the amount of principal and interest due. at the time of the payment by A. was an advancement to the two sons, the half due by A. being reduced by the amount of such payment.
5. Where the facts do not show that an administrator retained funds of the estate in his hands, and was warranted in so retaining them to meet the demands and exigencies of the estate, he should be charged with interest on his annual balances according to the principles declared in *Baker* v. *Lafitte,* 4 *Rich. Eq.* 392.
6. Where a father gave to his daughter a gold watch to make her equal with his advancements in negro slaves to another of his children, and, after emancipation, died intestate, the watch must be charged as an advancement to the daughter.

---

Before PRESSLEY, J., Newberry, February, 1882.

This was a petition by George W. Glenn and John E. Glenn, as administrators of the estate of G. W. Glenn, Sr., deceased, for

final settlement.    The decree of the Probate Court was as follows :

1. The abolition of slavery took place before the death of Geo. W. Glenn, and slaves given by him cannot be regarded as advancements.    By the statute the value of the advancement is to be estimated at the death of the ancestor, relation being had to its condition at the time of the gift.    This point is decided in the case of *Hughey* v. *Eichelberger*, 11 *S. C.* 51, where the Supreme Court holds that "we do not see how a slave can be regarded as an advancement when the intestate died after the abolition of slavery, when slaves lost their attributes as property."    It was contended by counsel for G. W. Glenn, administrator, that in that case the donor reserved title in himself, and had a life interest in the slaves, and that the principle does not apply in this case.    Regardless of the contingent titles held by the donor in that case, it was there decided that the slaves were not advancements, and so I hold in this case.

2. The question of interest in final accounts has been much discussed.    I have reviewed the authorities submitted by both sides.    The true mode of computing interest is laid down in the case of *Baker* v. *Lafitte*, 4 *Rich Eq.* 392.

3. The cash rents for the year 1867 are estimated at $500 in gold, and it is admitted that the premium on gold was 40 per cent.    I think that in the final account the administrator should be held accountable for the amount of $700, being the value of gold at that time in United States treasury notes.

4. It is in evidence that G. W. Glenn, Jr., and J. E. Glenn borrowed $5,000 from Col. John Glenn, and Dr. G. W. Glenn, Sr., was their surety.    It seems that John E. Glenn owed G. W. Glenn, Jr., a note of $1,800, with interest, amounting to $2,300, for which G. W. Glenn received, in 1865, a credit on the note of $5,000, leaving a balance of $2,700 still due on said note; that interest was paid on the note of Col. John Glenn up to the death of the latter.    There is, then, now due on the note of $5,000, interest from the death of Col. John Glenn up to 1865, when a credit of $2,300 should be placed upon the same, and the balance to bear interest to May 13th, 1881.    The note is for

E

money borrowed from Col. John Glenn, and assured by Dr. G. W. Glenn, Sr., and the evidence shows that it was considered by Dr. G. W. Glenn, Sr., to be an advancement to his sons G. W. and J. E. I think the proper way to estimate the amount which each should be liable for, is to ascertain the balance due at the date of the credit, and divide that amount equally, and allow the amount of advancement made to G. W., Jr., to be credited by $2,300, and then compute the interest on the balance due by each one to July 1st, 1881.

5. The note of $1,130 due by R. C. Gilliam is founded on the basis of slavery still existing, and the consideration is for negroes advanced, and, on the principle heretofore announced, it is not an advancement.

6. The gold watch was added to $1,000 note given to J. H. Mims to make his distributive share equal to R. C. Gilliam, the which consideration is based on negroes as an advancement, and therefore cannot be regarded as an advancement. Although the watch of itself did not partake of the same character, yet, taken in connection with the whole transaction, it, too, is tinged with the idea as held in *Hughes* v. *Eichelberger*, and under all these circumstances cannot be considered an advancement.

The note of $1,000 given by J. H. Mims stands in the same category as the $1,130 note of R. C. Gilliam, and for the same reasons cannot be regarded as an advancement.

It is therefore ordered that the distribution of the assets of the estate of Dr. Geo. W. Glenn, deceased, in the hands of the administrator be made in accordance with this decree, after the costs and disbursements of this action, and all advancements which were made as indicated herein, and such payments as may have been made by the administrator since the death of George W. Glenn, Sr., shall have been deducted.

From this decree an appeal was taken to the Circuit Court. The Circuit decree is sufficiently stated in the opinion of this court, as are also the exceptions.

*Messrs. Jones & Jones* and *George Johnstone*, for appellants.

*Messrs. J. T. Barron* and *W. H. Lyles*, contra.

September 28th, 1883. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. Dr. George W. Glenn, Sr., late of Newberry county, died in 1866. The appellants, his two sons, administered upon his estate. In June, 1870, they filed a petition in the Probate Court for a final settlement, but this was delayed, as it is alleged, by suits against the estate, especially the suit of one Harvey Terry against the stockholders of the Commercial Bank, which suit largely involved the estate. This suit, however, having terminated in July, 1881, another publication was made, and the settlement proceeded to a decree by the Probate Court. From this decree an appeal was taken to the Circuit Court, Judge Pressley presiding, and from Judge Pressley's decree, the matter is now before us on appeal.

The questions presented are: First. Whether certain of the distributees should account, as for advancements, for certain slaves given off to them by their father, the intestate, during his life, to wit, in 1860; the said intestate having died after emancipation, and some of the distributees having sold the slaves received, before emancipation. Second. G. W. Glenn, Jr., one of the appellants, under an order of court, rented the real estate of his father in 1867 at $500 in gold, and had charged himself in December, 1867, for said rent, $500, $166 of which he had paid out to Mary A. Glenn, one of the distributees. Gold at that time was at 40 per cent. premium, and the question is, Should he be charged with this premium, or simply for gold? Third. The appellants, some time before the death of their father, to wit, in 1859, had borrowed of their uncle, one John Glenn, the sum of $5,000, for which they gave their note, with their father, the intestate, as surety. In 1859 John Glenn died, and G. W. Glenn, Sr., the intestate, administered on his estate and became possessed of this note. In 1863, G. W. Glenn, Jr., paid on this note about $2,300. After this payment, and a short time before his death, G. W. Glenn, Sr., destroyed this note, having charged himself with it in the estate of his intestate, John Glenn, and the question as to this note is, whether the appellants should account for the same in full, debt and interest, or whether it should be regarded as an advancement to them by their father,

and, if so, at what time, or rather to what time, should interest on the note be added in ascertaining the amount of the advancement, and, also, in what proportion should each appellant account? Fourth. Should the appellants be charged with interest on the funds of the estate in their hands during the delayed settlement? Fifth. Should a gold watch, valued at $130, given to one of the distributees, Mrs. Mims, be charged as an advancement with the negroes bought by her husband?

As to these questions, Judge Pressley held: 1. Under the case of *Hughey* v. *Eichelberger*, 11 *S. C.* 51, that the negroes could not be regarded as advancements. 2. That the $5,000 note destroyed by the intestate, should be charged as an advancement to the appellants without interest until after the death of the intestate. 3. That G. W. Glenn, Jr., should be charged with 40 per cent. premium on the $500 rental of the land of his father. 4. That in the absence of all proof that appellants had kept the funds idle and uninvested, pending the litigation against them, they are liable for interest on their annual balances, and the interest should be calculated according to the rule laid down in *Baker* v. *Lafitte*, 4 *Rich. Eq.* 392. He made no decree as to the gold watch.

The appeal involves a review of these questions, and the rulings thereon by the Circuit judge. The decree adjudged other matters of interest to the parties, but the appeal embraces only the questions above stated. As to the first question, we regard the case of *Hughey* v. *Eichelberger, supra,* as conclusive and controlling. It was there held distinctly, Justice McIver delivering the opinion of the court, that where the parent had died after the abolition of slavery, slaves previously given off to a child, could not, under our statute, be charged as an advancement in the settlement of the estate of the father, the question as to the services of such slaves while in the child's possession being reserved, as the point was not raised in the case. Nor is that point raised here. It is true that, in the case of *Hughey* v. *Eichelberger*, the court was somewhat influenced by the ground taken by the appellant's counsel, to wit, that the father there had reserved a life-estate in the negroes given to the child; but the main ground relied upon by the court was the construction of

the act on the subject of advancements, and upon this Justice McIver said: "We do not see how a slave can be regarded as an advancement when the intestate died after abolition of slavery, whereby slaves lost their attributes as property. It is manifestly impossible to ascertain the value of such an advancement, if advancement it be called. By our act of 1791, corresponding in terms with section 7, *ch. LXXXV. Gen. Stat.* 440, the value of the advancement is to be estimated at the death of the ancestor, relation being had to its condition at the time of gift. *McCaw* v. *Blewit,* 2 *McCord Ch.* 104. * * * Now, in this case, the intestate having died after the slaves were emancipated, it is clearly impossible to ascertain the value of these slaves by the rule established by the statute, and we are not at liberty to invent any other." This reasoning is unanswerable, and applies to the case now before the court as strongly as it did to the case in which it was used. The ruling of the court below is sustained as to this point.

As to the second question, Judge Pressley says in his decree, that "for the year 1867 George Glenn, administrator, rented intestate's plantation for $500, payable in gold, and at the end of the year charged himself with $500, then received for such rent. About the same time he paid one of the distributees $166 in gold and charged in addition 40 per cent. premium on said payment. It is very clear that the remainder of said gold in his hands, as administrator, is chargeable with a like premium in the absence of all proof by him that he continued to hold said gold for estate purposes, until it depreciated in comparison with currency. The Judge of Probate has so decided, and I sustain him on that point."

There is nothing objectionable in this. The gold which the administrator received was the property of the estate. It was received by him for the estate; and at the time it was worth forty per cent. more than its nominal value, and the administrator should account for it at that value, unless it was held by him for estate purposes until it depreciated without fault on his part. If it was so held, and had depreciated, he above all others was cognizant of the fact, and it was incumbent on him to make proof thereof, otherwise its original value will be presumed

against him. This he seems to have understood, as he obtained credit for $166 paid to one of the distributees at the premium of forty per cent. It would not be just to charge him simply with the $500, and then credit him with its disbursement in whole or in part at a premium of forty per cent.

Third. In *Rees* v. *Rees*, 11 *Rich. Eq.* 108, where a mother held a bond against her son, given for eleven slaves, which, previous to her death, he had purchased from her, and which bond the mother destroyed, it was held as an advancement of so much money, and the son was required to account for it as such. This case is in point as to the $5,000 note held by the intestate on the appellants, and determines the question as to the fact whether this note should be regarded as an advancement. It must be so regarded, and being so regarded, it must be governed by the law applicable to advancements generally on the subject of interest. No interest can be charged until the death of the intestate. This is as to advancements generally, and it must apply here.

But the main questions are, When was the advancement made? What was its amount? and How should it be proportioned between the two sons? The note seems to have been destroyed by G. W. Glenn, Sr., a short time before his death, which took place in May, 1866. A payment of $2,300 had been made by G. W. Glenn, Jr., some time previous to the death of the intestate; but at what precise time it does not appear in the briefs. At one place it is stated in 1863, and at another in 1865. We suppose it was really made in 1865, as it is so stated in the decree of the Probate judge. At the time of this payment, the intestate had not determined to destroy the note. He still held it and received a large payment upon it from one of the makers. He must have concluded, however, within a short time after this payment, to destroy it—as he died early in the next year—and the evidence is that he destroyed it a short time before his death; but up to the time it was destroyed, it was a subsisting obligation against the two sons, principal and interest, and the amount then due must be regarded as the advancement. Taking the payment to have been made in 1865, the proper way to estimate the advancement would be to compute the interest up to the payment in 1865, then divide the amount between the two, charging each

with one-half at the death of the intestate as an advancement, the advancement of G. W. Glenn being diminished by a credit of the $2,300 paid by him on the note, and it is so adjudged.

Fourth. There is no error in the ruling of the Circuit judge as to the interest to be charged to the appellants, administrators, on the funds of the estate in their hands. The judge said: " In the absence of all proof that appellants kept the funds in hand uninvested and unused by them to meet pending litigation against them, they are liable for interest on their annual balances, &c., &c., the calculation to be made according to the rule stated in *Baker* v. *Lafitte,* 4 *Rich. Eq.* 392." Doubtless there are many cases where the rule would be deflected, and where the administrator or executor should be excused from interest altogether; but this should be upon facts warranting the holding of the funds idle to meet the demands and exigencies of the estate, and developing the fact that the funds were actually so held idle.

Fifth. We can see no reason why Mrs. Mims should not be charged with $130 as an advancement, the value of the gold watch received by her.

It is the judgment of the court that the decree below be modified in accordance with the principles hereinabove announced; and it is ordered that this judgment be certified to the Probate Court for Newberry county, so that the settlement may be made in conformity thereto.